UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **KAREN SOTO, on behalf of her minor child, JOHN DOE,** | ) ) ) ) | |
| **Plaintiff,** | ) ) ) | **Civil Action No.** |
| **v.** | ) ) | **25-11755-FDS** |
| **MARY BENSON SKIPPER, as Superintendent of Boston Public Schools, and BOSTON PUBLIC SCHOOLS,** | ) ) ) ) ) | |
| **Defendants.** | ) ) | |

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS

**SAYLOR, J.**

This is a dispute over whether a child has the right to attend Boston Public Schools. Plaintiff Karen Soto has filed this lawsuit on behalf of her son, John Doe. She is proceeding *pro se*. Defendants are Mary Benson Skipper, as Superintendent of Boston Public Schools, and Boston Public Schools ("BPS"). The complaint alleges claims under 42 U.S.C. § 1983 for violation of plaintiff's constitutional rights under the Equal Protection and Due Process clauses of the Fourteenth Amendment and under Mass. Gen. Laws. ch. 76, § 5.

Defendants have moved to dismiss the complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). For the following reasons, the motion will be granted.

I.      **BACKGROUND**

A.      **The Parties**

Karen Soto is a resident of Boston. (Compl. ¶ 9, Dkt. No. 1). She shares custody of her

son, "John Doe," with his father, who resides in Winchester, Massachusetts.  (*Id.* ¶¶ 8, 13).

John Doe is currently enrolled in the Winchester Public Schools.  (*Id.* ¶13).

### B.      Boston Public Schools' Residency Policy

Massachusetts law provides that school districts must provide education to students who reside in the district.  Mass. Gen. Laws ch. 76, § 5.  In accordance with that law, Boston has a residency policy that provides that a student must reside in the city in order to attend Boston Public Schools.[1]

The Boston Public Schools have three "exam" schools—Boston Latin School, Boston Latin Academy, and the John D. O'Bryant School of Mathematics and Science.  Admission to those schools is selective and competitive.

Students who are not currently enrolled in the Boston Public Schools and who apply to the exam schools must verify their Boston residency.  If the student currently attends a public school outside the city, a letter from the respective superintendent is required stating that they are aware of the child's Boston residency, and that the child is attending their public school as a non-resident.

### C.      Plaintiff's Efforts to Enroll Her Child in Boston Schools

In October 2024, Soto registered John Doe to take the Measure of Academic Progress ("MAP") entrance examination to the Boston exam schools.  (Compl. ¶ 12).  She then filed an application for him to attend an exam school.  (*Id.* ¶¶ 13, 14).  In November 2024, BPS revoked that application upon finding that Doe was a Winchester resident and was therefore not eligible

---

[1] *BPS Residency Policy*, Bos. Pub. Schs., https://www.bostonpublicschools.org/enrollment/bps-welcome-services/enroll-ff/bps-welcome-services/bps-residency-policy [https://perma.cc/NVC5-ALBU].  Under that policy, "'[r]esidence]' is the primary place where a person dwells permanently, not temporarily, and is the place that is the center of his or her domestic, social, and civic life."  *Id.*; *cf. Hershkoff v. Board of Registrars of Voters*, 366 Mass. 570, 576 (1974) ("Home is the place where a person dwells and which is the center of his domestic, social and civil life.").

for entrance to a BPS exam school.  (*Id.* ¶ 15).  Soto appealed that decision, alleging proof of

Boston residency.  (*Id.* ¶ 17).  In December 2024, BPS denied the appeal.  (*Id.* ¶ 19).

### D.      The Proceeding in the Superior Court

After BPS denied the appeal of the district's residency determination, Soto filed a

complaint for injunctive relief in Massachusetts Superior Court.  (*Id.* ¶ 20).  The complaint

requested that the court order BPS to administer the MAP exam to Doe and honor admission to

BPS based on his mother's residency.  (*Id.*).

The Superior Court then issued an order to allow Doe to sit for the MAP exam, but not

for admission to BPS.  (*Id.* ¶ 21).  Ultimately, however, the Superior Court dismissed the case,

concluding that the only allowable relief had already been granted through the order permitting

Soto's son to sit for the MAP exam.  (*Id.* ¶ 22).

In April 2025, BPS received a communication from Soto asking about the status of

Doe's application.  (*Id.* ¶ 23).  BPS responded that the application had been revoked for lack of

residency.  (*Id.*).  Soto then requested Doe's immediate admission to BPS citing the order

concerning only the MAP test.  (*Id.* ¶ 24).  That same month, she filed a motion for clarification

of judgment and to confirm the complaint.  (*Id.* ¶ 25).  In May 2025, the Superior Court denied

the plaintiff's motion.  (*Id.* ¶ 26).

### E.      The Present Proceeding

In June 2025, plaintiff filed this action.  The complaint asserts that BPS's determination

that John Doe did not meet the residency requirement violated the Fourteenth Amendment and

Mass. Gen. Laws ch. 76, § 5.  Plaintiff simultaneously moved for a preliminary injunction,

which the Court denied.  Defendants have now moved to dismiss the complaint.

3

II.    **Standard of Review**

Defendants have moved to dismiss the complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

On a motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)).  If the party seeking to invoke federal jurisdiction "fails to demonstrate a basis for jurisdiction," the motion to dismiss must be granted. *Id.*  When ruling on a motion to dismiss under Rule 12(b)(1), the court must "credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must state a claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences.  *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain

4

recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

For the purposes of analyzing a motion to dismiss, the complaint must be construed generously because plaintiff is proceeding *pro se*. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Rodi v. Southern New Eng. Sch. of L.*, 389 F.3d 5, 13 (1st Cir. 2004). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation modified); *see* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). "Nevertheless, a litigant's exercise of his right to self-representation does not exempt him from complying with the relevant rules of procedural and substantive law." *Martinez-Machicote v. Ramos-Rodriguez*, 553 F. Supp. 2d 45, 49 (D.P.R. 2007).

## III.    Analysis

### A.    Subject-Matter Jurisdiction

Although the complaint asserts a claim arising under federal law, defendants contend that subject-matter jurisdiction does not exist because the controversy is moot and because the complaint essentially seeks to re-litigate a final state-court decision.

Defendants first contend that the case is moot because the admission cycle for the 2025-2026 school year has closed. Even assuming that fact is true, the controversy appears to be "capable of repetition, yet evading review." That exception to the mootness doctrine applies where "(1) the challenged action did not last long enough for the parties to litigate the harm before it ended; and (2) there is a reasonable expectation that the complaining party will endure the same allegedly harmful action at some point in the future." *Snell v. Neville*, 998 F.3d 474,

485 (1st Cir. 2021).  The admission cycle for the BPS exam schools is too short to enable full litigation.  *Cf. Board of Educ v. Rowley*, 458 U.S. 176, 186 n.9 (1982) (explaining, in the context of student individualized educational programs, that "[j]udicial review invariably takes more than nine months to complete").  Because BPS has twice denied John Doe's admission based on his failure to meet the Boston residency requirement, it is likely that they would do so again for the following school year.  At this stage, the case is not moot.

Defendants further contend that the court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine.  Under that doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments."  *Tyler v. Supreme Judicial Court*, 914 F.3d 47, 50 (1st Cir. 2019) (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006)).  It applies where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment."  *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)).

Defendants contend that plaintiff filed a notice of appeal of the Superior Court judgment in June 2025, around the same time that she filed her complaint in this court.  The *Rooker-Feldman* doctrine is limited to circumstances in which the federal action is filed after the state court proceedings have "ended."  *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24 (1st Cir. 2005).  Generally, proceedings have "ended" when the highest state court in which review is available has affirmed the judgment; neither party seeks further action; or the state court proceedings have finally resolved all federal questions.  *Id.*  If plaintiff filed an appeal, then she is seeking further action in state court and the state court proceedings did not end before the initiation of the federal litigation.

6

In that circumstance, the *Rooker-Feldman* doctrine does not apply, and dismissal on that basis is not warranted.

### B.      Failure to State a Claim

Defendants also contend that plaintiff's claim under 42 U.S.C. § 1983, which asserts both an equal protection and procedural due-process theory, must be dismissed for failure to state a claim.

#### 1.      Equal-Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides, in general terms, that similarly situated persons are entitled to receive similar treatment at the hands of government actors. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "[T]o establish a plausible equal protection claim, a plaintiff not relying on typically impermissible bases for classification (e.g., race, religion, etc.) must show that it was 'intentionally treated differently from others similarly situated, that no rational basis exist[ed] for that difference in treatment, and that the different treatment was based on a malicious or bad faith intent to injure.'" *Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 10 (1st Cir. 2013) (alteration in original) (quoting *Buchanan v. Maine,* 469 F.3d 158, 178 (1st Cir. 2006)).

The grounds for the equal-protection claim are not clear from the complaint. A public-education residency requirement that is "appropriately defined and uniformly applied" generally does not offend the Equal Protection Clause. *Martinez v. Bynum*, 461 U.S. 321, 328 (1983).

The complaint does allege that "private school students from outside Boston may apply to BPS Exam schools, but a child residing in Boston attending a public school outside of

Boston is denied this same opportunity." (Compl. ¶ 30). That is not the policy, however.[2]
Like students that currently attend public schools outside of Boston, students that currently
attend private schools outside of Boston must establish Boston residency to be eligible to
attend BPS.[3]

It is true that in order to establish residency, a student currently attending a public school
outside of Boston must submit a letter from the appropriate superintendent stating that he or
she is aware of the child's Boston residency and that the child is attending public school in that
community as a non-resident. That requirement has a rational basis, as public school
attendance, but not private school attendance, is tied to residency. Regardless, the complaint
does not challenge that requirement.

Because the complaint asserts no plausible equal-protection claim, the Court will grant
the motion to dismiss as to that claim.

### 2.      Procedural Due-Process Claim

Procedural due process is a "guarantee of fair procedure." *Amsden v. Moran*, 904 F.2d
748, 753 (1st Cir. 1990) (quoting *Zinermon v. Burch,* 494 U.S. 113, 125 (1990)). It ensures
that "before a significant deprivation of liberty or property takes place at the state's hands, the
affected individual must be forewarned and afforded an opportunity to be heard 'at a
meaningful time and in a meaningful manner.'" *Id.* (quoting *Armstrong v. Manzo*, 380 U.S.
545, 552 (1965)). In evaluating a procedural due-process claim, the court must determine (1)
whether the plaintiff was deprived of a protected liberty or property interest (2) without

---

[2] To the extent that plaintiff asserts that BPS's residency requirements violate the Equal Protection Clause, the terms of that policy are central to her claims and thus properly considered on a motion to dismiss. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

[3] "In order to attend Boston Public Schools, a student must actually reside in the City of Boston." *BPS Residency Policy*, *supra* note 1. There is no exception for students currently attending private schools. *Id.*

adequate due process of law.  *See Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 13 (1st Cir. 2011).

A protected property interest is "created and defined by existing rules or understandings that stem from an independent source such as state law."  *Hatfield-Bermudez v. Aldanondo-Rivera*, 496 F.3d 51, 59 (1st Cir. 2007) (citation modified) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  "That independent source must give the individual a legitimate claim of entitlement to some sort of benefit."  *Id.*

Massachusetts state law grants "[e]very person . . . [the] right to attend the public schools of the town where he actually resides."  Mass. Gen. Laws ch. 76, § 5.  It therefore appears that Doe has a protected property interest in attending school in Boston if that is the city where he actually resides.

To succeed on her procedural due-process claim, plaintiff must show that BPS deprived Doe of that right without adequate process.  According to the complaint, on November 18, 2024, BPS informed plaintiff that Doe's application was revoked due to violation of the residency policy.  The complaint alleges that "BPS did not grant a hearing to Mother . . . despite being allowed by the Fourteenth Amendment of the United States Constitution," although it did permit her to appeal the decision and submit additional proof of residency.  (Compl ¶¶ 16-17).

Even assuming that BPS did not provide plaintiff a hearing, that does not necessarily amount to a due-process violation.  *See Fusion Learning, Inc. v. Andover Sch. Comm.*, 609 F. Supp. 3d 5, 14 (D. Mass. 2022) (citing *Hudson v. Palmer*, 468 U.S. 517, 530-34 (1984)).  The First Circuit has explained that "[w]here a state has provided reasonable remedies to rectify a legal error by a local administrative body[,] . . . due process has been provided[.] . . .  [S]ection

9

1983 is not a means for litigating the correctness of the state or local administrative decision in a federal forum." *Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 832 (1st Cir. 1982). A meaningful post-deprivation remedy may be sufficient. *See Hudson*, 468 U.S. at 533 ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.").

Here, plaintiff alleges that she was permitted to appeal the adverse decision and submit additional evidence of residency. Furthermore, she has a meaningful remedy through review in state court, by *certiorari* or otherwise. *See* Mass. Gen. Laws ch. 249, § 4 ("A civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law . . . may be brought in the supreme judicial or superior court . . . ."); *see also Ding ex rel. Ding v. Payzant*, 2004 WL 1147450, at *1 (Mass. Super. May 20, 2004) (reviewing on *certiorari* BPS's discharge of two students from the Boston Latin School on the ground that they were ineligible to attend because they did not reside in Boston). Indeed, plaintiff has availed herself of her right to state-court review. Because plaintiff had a meaningful post-deprivation remedy, her procedural due-process claim must also fail.

Accordingly, the complaint fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983.

### C.    Exercise of Supplemental Jurisdiction

When a complaint does not state a viable claim under federal law, and jurisdiction over the remaining claims is based solely on supplemental jurisdiction, a "district court has discretion to decline to exercise supplemental jurisdiction." *Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 431 n.10 (1st Cir. 2010); 28 U.S.C. § 1367(c). In so doing, the court "must take into account

10

considerations of judicial economy, convenience, fairness to the litigants, and comity." *Delgado v. Pawtucket Police Dep't*, 668 F.3d 42, 48 (1st Cir. 2012); *see also Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017) ("[I]t can be an abuse of discretion—if no federal claim remains—for a district court to retain jurisdiction over a pendent state law claim when that state law claim presents a substantial question of state law that is better addressed by the state courts.").

Here, plaintiff's only federal claim has been dismissed.  What remains is a state-law claim, and no discovery has occurred concerning the merits of that claim.  Accordingly, the Court declines to exercise supplemental jurisdiction and will dismiss the remaining state-law claim without prejudice.

## IV.      Conclusion

For the foregoing reasons, the motion to dismiss of defendants Mary Benson Skipper, in her official capacity as Superintendent of Boston Public Schools, and Boston Public Schools is GRANTED.  Plaintiff's remaining claim under Mass. Gen. Laws ch. 76, § 5 is DISMISSED without prejudice.

**So Ordered.**

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  June 17, 2026                                 United States District Court Judge

11